IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

FILED - GR
07 MAR 16 AM 10: 52
      , CLERK
      CT COURT
WESTERN DISTRICT MICH
BY:_____

| | |
|---|---|
| ALTICOR INC., a Michigan Corporation, AMWAY CORPORATION, a Delaware Corporation, QUIXTAR INC., a Virginia Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NCR CORPORATION, a Maryland Corporation,<br><br>Defendant. | Case No.<br><br>1:07 CV 0262<br><br>Judge:<br><br>**Richard Alan Enslen**<br>**U.S. District Judge** |

## COMPLAINT FOR DECLARATORY RELIEF AND DEMAND FOR JURY TRIAL

Plaintiffs Alticor Inc. ("Alticor"), Amway Corporation ("Amway"), and Quixtar Inc. ("Quixtar"), for their complaint against NCR Corporation ("NCR") allege as follows:

### PARTIES

1.    Plaintiff Alticor is a Michigan corporation with its principal place of business in Ada, Michigan.

2.    Plaintiff Amway is a Delaware corporation with its principal place of business in Ada, Michigan.

3.    Plaintiff Quixtar is a Virginia corporation with its principal place of business in Ada, Michigan.

4.    Upon information and belief, Defendant NCR is a Maryland corporation with its principal place of business in Dayton, Ohio. On information and belief, NCR is the assignee of the patents at issue in this Complaint (the "NCR Patents").

1

## JURISDICTION

5. This is an action under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202, for a declaration pursuant to the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, that the NCR Patents are not infringed, are not valid, and are not enforceable against Plaintiffs.

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question), 28 U.S.C. § 1332 (diversity of parties), and 28 U.S.C. § 1338(a) (action arising under an Act of Congress relating to patents).

7. On information and belief, this Court has personal jurisdiction over NCR because NCR has constitutionally sufficient contacts with Michigan so as to make personal jurisdiction proper in this Court. In particular, on information and belief, NCR conducts or solicits business within this district and elsewhere in Michigan and derives substantial revenue from the sales of its products and/or services within this district and elsewhere in Michigan.

## VENUE

8. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) & (c).

## GENERAL ALLEGATIONS

9. Alticor is a direct parent company of Plaintiff Amway, and an indirect parent company of Plaintiff Quixtar.

10. Quixtar is a successor in interest to certain assets of the Michigan Amway Corporation, which changed its name to Alticor Inc. Starting in 1959, Amway, and then Quixtar from 1999 to the present, have provided the opportunity for millions of individuals throughout the United States to own their own businesses as independent distributors of Amway products. Quixtar distributes products and services exclusively through individual distributors, known as

2

Independent Business Owners ("IBOs"). Quixtar IBOs earn income based on sales that are ordered through Quixtar's website at www.quixtar.com ("Quixtar website").

11. On May 26, 2005, Bruce A. Langos, Vice President of Business Operations and Intellectual Property Management at NCR, wrote to Quixtar identifying the nine NCR Patents allegedly infringed by the Quixtar website. (Ex. 1). The letter expressly stated that the operation of the Quixtar website is "covered by [the NCR] patents." The letter set a short deadline for a settlement and stated that if that deadline was not met, NCR's demands would increase.

12. By letter dated June 28, 2005, Quixtar responded to NCR's letter by requesting, among other things, a copy of all prior art that was not of record during the prosecution of the NCR Patents, the terms that NCR was proposing to Quixtar, and a copy of any license or other agreements that NCR had made with others concerning the NCR Patents. (Ex. 2).

13. By letter dated July 6, 2005, NCR refused to provide the requested information unless Quixtar entered into a Non-Disclosure Agreement ("NDA"). (Ex. 3)

14. Quixtar reviewed the terms of NCR's proposed NDA and found them to be unacceptable. For instance, much of the requested information, such as prior art, was in the public domain. Quixtar advised NCR that its demands that Quixtar keep this public information confidential were inappropriate. Quixtar also advised NCR that Quixtar had concluded that it did not infringe any valid claim of the NCR Patents, and, therefore, did not require a license under these patents. Quixtar also offered to meet with NCR to explain the basis for Quixtar's conclusions. (Ex. 4)

15. On November 10, 2005, counsel for Quixtar traveled to NCR's headquarters in Dayton, Ohio to meet with NCR's in-house Senior Patent Counsel. In painstaking detail, Quixtar explained the reasons why it concluded that no valid claim of any of the NCR Patents

was infringed by Quixtar. NCR's Senior Patent Counsel responded that she would need to reconsider NCR's allegations of patent infringement after consulting with an NCR technical person who was unavailable "for the next several weeks."

16. Several months then passed without any word from NCR. Quixtar eventually came to believe that NCR, after having consulted with its technical experts, concluded that Quixtar did not infringe any valid claim of the NCR Patents. Accordingly, Quixtar thought the matter was resolved.

17. After over four months of silence, and to Quixtar's surprise, NCR, this time through its outside patent counsel, contacted Quixtar by letter dated March 28, 2006, again raising the issue of NCR's Patents. In that letter, NCR mischaracterized Quixtar's "primary position" as explained during the November 10th meeting in Dayton. NCR proposed another meeting to discuss "patent license terms as an alternative to litigation." (Ex. 5).

18. By letter dated March 31, 2006, Quixtar responded. Quixtar advised that NCR's most recent letter failed to address the non-infringement positions explained by Quixtar in great detail during the November 10th meeting with NCR's Senior Patent Counsel. Quixtar agreed to meet with NCR's new outside counsel in order to once again explain the basis for its conclusions of non-infringement. (Ex. 6).

19. Quixtar's counsel and NCR's outside counsel met in Chicago on April 26, 2006. Once again, Quixtar explained the basis for its conclusions that it did not infringe any valid claim of the NCR Patents. NCR's outside counsel took notes and explained that they would provide a substantive response in about a week. NCR then raised the issue of a potential license. Quixtar responded that it did not need a license and reminded NCR that it had yet to provide a substantive response to Quixtar's non-infringement positions.

20. Once again, months passed without any response from NCR. Again, NCR's silence caused Quixtar to conclude that NCR agreed with Quixtar's conclusions and that the matter was resolved.

21. Nearly seven months after the April 26th meeting in Chicago, NCR's outside counsel contacted Quixtar's counsel by letter dated November 14, 2006. (Ex. 7). That letter began by advising that Quixtar was not on NCR's "litigation list." The letter then attempted to address the substance of Quixtar's conclusions of non-infringement. NCR's letter concluded with the suggestion that NCR and Quixtar again meet in person to discuss the issues rather than engaging in an extended letter-writing campaign.

22. By letter dated December 14, 2006, Quixtar responded that it would be happy to meet again and discuss the substance of NCR's allegations of infringement and noted that NCR's recent November 14th letter manifested a misunderstanding of the accused Quixtar website. (Ex. 8).

23. Thereafter, in late January and into early February, 2007, the parties were attempting to schedule a mutually convenient date for a meeting to further discuss the issues.

24. On February 22, 2007, without warning, NCR unilaterally effectively eliminated any further meeting by filing a suit for patent infringement against Alticor, Amway, and Quixtar in the United States District Court for the Northern District of Illinois ("the Illinois Action") (Ex. 9). NCR's complaint alleged that the design, construction, maintenance, operation, and use of the Quixtar website infringes the nine NCR Patents that were the subject of Quixtar's and NCR's discussions. The NCR Patents are:

5

  a. U.S. Patent No. 5,832,496 (the "'496 Patent"), issued on November 3, 1998, entitled "System and Method for Performing Intelligent Analysis of a Computer Database;"

  b. U.S. Patent No. 5,951,643 (the "'643 Patent"), issued on September 14, 1999, entitled "Mechanism for Dependably Organizing and Managing Information for Web Synchronization and Tracking Among Multiple Browsers;"

  c. U.S. Patent No. 5,991,791 (the "'791 Patent"), issued on November 23, 1999, entitled "Security Aspects of Computer Resource Repositories;"

  d. U.S. Patent No. 6,026,403 (the "'403 Patent"), issued on February 15, 2000, entitled "Computer System for Management of Resources;"

  e. U.S. Patent No. 6,169,997 (the "'997 Patent"), issued on January 2, 2001, entitled "Method and Apparatus for Forming Subject (Context) Map and Presenting Internet Data According to the Subject Map;"

  f. U.S. Patent No. 6,253,203 (the "'203 Patent"), issued on June 26, 2001, entitled "Privacy-Enhanced Database;"

  g. U.S. Patent No. 6,480,855 (the "'855 Patent"), issued on November 12, 2002, entitled "Managing a Resource on a Network where each Resource has an Associated Profile with an Image;"

  h. U.S. Patent No. 6,502,096 (the "'096 Patent"), issued on December 31, 2002, entitled "Computer Asset Management System;" and

  i. U.S. Patent No. 6,714,931 (the "'931 Patent"), issued on March 30, 2004, entitled "Method and Apparatus for Forming User Sessions and Presenting Internet Data According to the User Sessions."

25. Copies of the NCR Patents are attached hereto as Exhibits A through I to the complaint in the Illinois Action, which is attached as Exhibit 9 hereto.

26. Alticor, Amway, and Quixtar bring this Declaratory Judgment Action because there is no personal jurisdiction over Alticor and Amway in the Illinois Action. Neither Alticor nor Amway conducts business, maintains assets, owns property, or otherwise has minimal contacts with Illinois. They also do not engage in any acts of alleged infringement in Illinois. As such, venue is also improper as to Alticor and Amway in the Illinois Action.

27. In addition, the Western District of Michigan is a much more convenient forum for resolving the current dispute. This district is the home forum of Alticor, Amway, and Quixtar. Most, if not all, of the relevant witnesses, documents, and other sources of proof are located in this district. The alleged acts of infringement occurred in this district. The accused Quixtar website was designed, developed, and constructed in this district, and this is where the accused Quixtar website is operated and maintained. In contrast, the Northern District of Illinois is not the home forum for any of the parties. None of the material witnesses are located in Illinois. None of the relevant documents or other sources of proof are located in Illinois. None of the alleged acts of infringement occurred in Illinois.

28. Alticor and Amway will be filing motions to dismiss the Illinois Action for lack of personal jurisdiction or, in the alternative, to transfer the Illinois Action to the Western District of Michigan. Quixtar will be filing a motion to transfer the Illinois Action to the Western District of Michigan. Once transferred, the Illinois Action, to the extent it involves Quixtar, may be consolidated with this action.

29. Alticor, Amway, and Quixtar do not infringe any claim of the NCR Patents.

30. The asserted claims of the NCR Patents are not valid or enforceable to the extent any of them are construed to cover the Quixtar website.

31. An actual and justiciable controversy exists between NCR, on the one hand, and Alticor, Amway, and Quixtar, on the other, concerning the infringement and validity of the asserted claims of the NCR Patents. Alticor, Amway, and Quixtar ("the Declaratory Judgment Plaintiffs") now seek declaratory judgment that none of them infringes any valid claim of the NCR Patents.

### FIRST CLAIM FOR RELIEF
### (Declaratory Relief as to the '496 Patent)

32. The Declaratory Judgment Plaintiffs incorporate by reference paragraphs 1 through 31 above as though fully set forth herein.

33. The Declaratory Judgment Plaintiffs are not liable for directly infringing, contributorily infringing, or actively inducing others to infringe any valid claim of the '496 Patent.

### SECOND CLAIM FOR RELIEF
### (Declaratory Relief as to the '643 Patent)

34. The Declaratory Judgment Plaintiffs incorporate by reference paragraphs 1 through 31 above as though fully set forth herein.

35. The Declaratory Judgment Plaintiffs are not liable for directly infringing, contributorily infringing, or actively inducing others to infringe any valid claim of the '643 Patent.

### THIRD CLAIM FOR RELIEF
### (Declaratory Relief as to the '791 Patent)

36. The Declaratory Judgment Plaintiffs incorporate by reference paragraphs 1 through 31 above as though fully set forth herein.

37. The Declaratory Judgment Plaintiffs are not liable for directly infringing, contributorily infringing, or actively inducing others to infringe any valid claim of the '791 Patent.

### FOURTH CLAIM FOR RELIEF
### (Declaratory Relief as to the '403 Patent)

38. The Declaratory Judgment Plaintiffs incorporate by reference paragraphs 1 through 31 above as though fully set forth herein.

39. The Declaratory Judgment Plaintiffs are not liable for directly infringing, contributorily infringing, or actively inducing others to infringe any valid claim of the '403 Patent.

### FIFTH CLAIM FOR RELIEF
### (Declaratory Relief as to the '997 Patent)

40. The Declaratory Judgment Plaintiffs incorporate by reference paragraphs 1 through 31 above as though fully set forth herein.

41. The Declaratory Judgment Plaintiffs are not liable for directly infringing, contributorily infringing, or actively inducing others to infringe any valid claim of the '997 Patent.

### SIXTH CLAIM FOR RELIEF
### (Declaratory Relief as to the '203 Patent)

42. The Declaratory Judgment Plaintiffs incorporate by reference paragraphs 1 through 31 above as though fully set forth herein.

43. The Declaratory Judgment Plaintiffs are not liable for directly infringing, contributorily infringing, or actively inducing others to infringe any valid claim of the '203 Patent.

### SEVENTH CLAIM FOR RELIEF
### (Declaratory Relief as to the '855 Patent)

44. The Declaratory Judgment Plaintiffs incorporate by reference paragraphs 1 through 31 above as though fully set forth herein.

45. The Declaratory Judgment Plaintiffs are not liable for directly infringing, contributorily infringing, or actively inducing others to infringe any valid claim of the '855 Patent.

### EIGHTH CLAIM FOR RELIEF
### (Declaratory Relief as to the '096 Patent)

46. The Declaratory Judgment Plaintiffs incorporate by reference paragraphs 1 through 31 above as though fully set forth herein.

47. The Declaratory Judgment Plaintiffs are not liable for directly infringing, contributorily infringing, or actively inducing others to infringe any valid claim of the '096 Patent.

## NINTH CLAIM FOR RELIEF
### (Declaratory Relief as to the '931 Patent)

48. The Declaratory Judgment Plaintiffs incorporate by reference paragraphs 1 through 31 above as though fully set forth herein.

49. The Declaratory Judgment Plaintiffs are not liable for directly infringing, contributorily infringing, or actively inducing others to infringe any valid claim of the '931 Patent.

### PRAYER FOR RELIEF

WHEREFORE, the Declaratory Judgment Plaintiffs pray for relief against NCR as follows:

1. For a declaration that the Declaratory Judgment Plaintiffs are not liable for infringing any valid claim of the NCR Patents;

2. For a declaration that this is an exceptional case under 35 U.S.C. § 285 and for an award to the Declaratory Judgment Plaintiffs of their attorneys' fees and expenses in this action; and

3. For such other relief as the Court may deem just and proper.

11

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), the Declaratory Judgment Plaintiffs hereby demand a trial by a jury of all issues so triable in this action

Dated: March 15, 2007

*James R. Sobieraj* / JCW
James R. Sobieraj
Ralph J. Gabric
BRINKS HOFER GILSON & LIONE
NBC Tower
455 Cityfront Plaza Drive, Suite 3600
Chicago, Illinois 60601 l
Tel.: 312 321 4200
Fax: 312 321 4299

Albertus Hultink
Catherine Lynem
Alticor Inc.
7575 Fulton Street East
Ada, Michigan 49355-0001
Telephone: (616) 787-6000
Facsimile: (616) 787-9027

Attorneys for ALTICOR INC; AMWAY CORPORATION; AND QUIXTAR INC.